PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EXAL CORPORATION, *et al.*, ) | |
| ) | CASE NO. 4:12cv1830 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| ROESLEIN & ASSOCIATES, INC., ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendant. ) | **ORDER** [Regarding ECF No. 104] |

This matter is before the Court upon the Motion to Dismiss Counts 1, 2, and 8 of the Second Amended Complaint filed by Defendant Roeslein & Associates, Inc. ("Roeslein"). ECF No. 104. Plaintiffs Exal Corporation and C2C Aluminum Technology Corporation ("Plaintiffs") responded (ECF No. 106), and Roeslein replied (ECF No. 108). For the reasons explained below, the Court grants Roeslein's motion in part and denies it in part.

## I. Background

### A. Facts as Alleged by Plaintiffs

Plaintiffs manufacture aluminum cans and bottles for beverage and aerosol can products. ECF No. 100 at 1, ¶1. They hired Roeslein as a consultant on two projects: (1) in 2009, to provide engineering support in planning the potential construction of a new bottling facility in Youngstown, Ohio, and assistance with financial modeling to determine whether the attendant investment was justified; and (2) to advise and assist in improving aspects of Plaintiffs' coil to can manufacturing line ("C2C line") it had developed. *Id.* at 2, ¶3. Plaintiffs sought Roeslein's assistance "to prepare for the expansion of Exal's already existing business relationship with two

(4:12cv1830)

of its largest customers, Anheuser-Busch InBev ("AB") and Coca-Cola ("Coke")." *Id*. at ¶4.

In order to protect its "invaluable proprietary information and knowledge," Plaintiffs insisted on confidentiality and non-disclosure. *Id*. at ¶5. The parties entered into a Mutual Confidentiality Agreement. *Id*. Plaintiffs allege that, as part of its consulting work, Roeslein became "intimately aware of the business relationship that existed between Exal and both AB and Coke," and helped prepare "bid packages to both Coke and AB outlining the supply of product to be produced in Exal's new potential C2C bottling facility in Youngstown." *Id*. at 3, ¶9.

During negotiations between Plaintiffs and AB for a "new, expanded relationship," Plaintiffs allege that Roeslein, on its own, "began pursuing work from AB," "reached an agreement with AB[]" and "began designing, constructing, and optimizing a C2C line for AB[]." *Id*. at 31, ¶137. Thereafter, Plaintiffs obtained a contract with AB that fell short of Plaintiffs' expectations. *Id*. at 18, ¶72. Plaintiffs also allege that Roeslein began pursuing a business opportunity with a competitor to assist in building a plant that would manufacture C2C bottles for Coke. *Id*. at 3, ¶11.

As a result of Roeslein's conduct, Plaintiffs brought this action against Roeslein asserting claims for misappropriation of trade secrets pursuant to the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61 *et seq.*; fraud; breach of contract, including the Mutual Confidentiality Agreement in addition to the 2009 and 2011 Purchase Orders; tortious interference with prospective economic advantage; and tortious interference with a business relationship. *See* ECF No. 1 at 19-29.

(4:12cv1830)

### B. Prior Rulings

Previously, Roeslein moved to dismiss Counts 2, 6 and 7 (fraud, tortious interference) of the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) and moved for a more definite statement as to all counts.  *See* ECF No. 19; 20.[1]  In its motion to dismiss, Roeslein argued that the tortious interference claims were preempted by OUTSA.  ECF No. 19 at 1.  The Court acknowledged that the Act preempted certain common law causes of action but rejected Roeslein's arguments as premature.[2]  ECF No. 39 at 3-6.

The Court granted Roeslein's motion for a more definite statement as to the fraud claim and denied the motions in all other respects.  *See* ECF No. 39.  In its motions, Roeslein argued that it was unable to fashion a response to the claims because it could not identify the documents or portions thereof allegedly breached, and that Plaintiffs did not sufficiently identify its trade secrets or other information allegedly misappropriated.  *See* ECF Nos. 19; 20.  The Court rejected these arguments, finding that the Complaint complied with the requirements of notice pleading under Fed. R. Civ. Pro. 8(a).  ECF No. 39 at 7-8.  As to the fraud claim, the Court pointed to the heightened pleading requirement of Rule 9(b) as its basis for granting Roeslein's motion for a more definite statement as to that claim.  ECF No. 39 at 7.

As instructed by the Court, Plaintiffs filed a First Amended Complaint purportedly consistent with the Court's ruling as to the fraud claim.  *See* ECF No. 39 at 9; 42.  After

---

[1] Roeslein moved for a more definite statement as to Counts 2, 6 and 7 in ECF No. 19; and a more definite statement as to Counts 1, 3, 4 and 5 in ECF No. 20.

[2] The Honorable David D. Dowd, Jr. presided.

(4:12cv1830)

resolution of a discovery dispute regarding information uncovered by Plaintiffs during a deposition of Roeslein's Rule 30(b)(6) witness, David May, Plaintiffs were granted leave to file a Second Amended Complaint that included litigation strategies developed based on May's deposition testimony.  *See* ECF No. 92 at 3.

In the Second Amended Complaint, ECF No. 100, the fraud claim has been expanded to include Count 1, common law fraud, and Count 2, fraud in the inducement.  *Id*. at 21-26. Plaintiffs' misappropriation of trade secrets claim, Count 8, has been remodeled to address Roeslein's actions regarding one of Plaintiffs' competitors and, allegedly, is based on information gleaned from the deposition of David May.[3]  *Id*. at 34.

Roeslein filed a Motion to Dismiss Counts 1, 2 and 8 of the Second Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).  ECF No. 104.

## II.  Legal Standard

When reviewing a motion to dismiss, a court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 501 (6th Cir. 2007), quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  A complaint need not contain detailed factual allegations, but it requires more than "labels and conclusions" or "a formulaic recitation of the

---

[3] Plaintiffs' trade secrets claim in the original Complaint purportedly addressed Roeslein's acts regarding AB.  *See* ECF No. 106 at 2-3.  Plaintiffs state that they reached an agreement with AB during settlement negotiations in the instant case after the Complaint was filed, and that as part of their agreement with AB they agreed to drop the claim against Roeslein for work relating to AB.  ECF Nos. 106 at 2-3, 12; 56.

4

(4:12cv1830)

elements of a cause of action." *Twombley*, 550 U.S. at 555. To survive a motion to dismiss, the complaint must also contain sufficient facts which if accepted as true, state a claim that is plausible on its face, rather than just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy the facial plausibility test, the plaintiff must plead facts from which the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### III. Analysis

**A. Count 8—Misappropriation of Trade Secrets, Ohio Rev. Code § 1333.61** *et seq*.

Roeslein argues that Plaintiffs' misappropriation of trade secrets claim must be dismissed because (1) Plaintiffs have not pleaded the existence of a trade secret; and (2) Plaintiffs cannot provide factual evidence of the unauthorized use of a trade secret. ECF No. 104 at 1.

**1. Existence of a Trade Secret**

Roeslein argues that Plaintiffs' description of its "confidential and proprietary information" is insufficient to plead the existence of the trade secrets allegedly misappropriated. ECF No. 104 at 6-7.[4] Roeslein relies on *Sensus USA, Inc. v. Elliot Bay Eng'g, Inc.*, 2011 WL

---

[4] The Ohio Revised Code defines "trade secret" as:

[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

5

(4:12cv1830)

2650028, at *7 (W.D.Pa. July 6, 2011), in which the court granted dismissal of a misappropriation claim, finding the party failed to plead "even a general description of what 'information' or 'information, methods, and techniques' the alleged trade secrets consist of." Plaintiffs contend that the Court previously ruled on this matter in its Order addressing Roeslein's motion for a more definite statement and found the pleading sufficient. ECF No. 106 at 6. Plaintiffs also argue that they have properly pleaded the existence of a trade secret in the Second Amended Complaint in which they describe:

> i. Financial projections and cost structure information concerning the New Building Project, including without limitation production, labor, material, facility, utility, and other operational information fundamental to the design, construction, and operation of the C2C lines proposed for the new building;
>
> ii. Information concerning the identity and method of use of all raw materials used by Exal in the C2C line operations, including without limitation lacquers, coatings, temperatures, thicknesses, and other settings for their application as developed during the research and development phase of the existing C2C line by Exal;
>
> iii. The necessary adjustments and settings required to facilitate proper necking operations, including without limitation the alignments, pressures, and other settings regarding the tooling of the existing C2C line; and
>
> iv. Operational information and materials shared, collected, and reviewed in the creation of the maintenance manual and standard operating procedures, including without limitation images of Exal's equipment and the configuration and settings thereof.

---

> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R. C. § 1333.61(D).

(4:12cv1830)

ECF No. 106 at 16, ¶67.

The Court finds that the Second Amended Complaint adequately describes the trade secrets at issue, and Plaintiffs have, therefore, adequately pleaded the existence of a trade secret. See *id.* (citing *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *8 (W.D.Pa. Dec. 13, 2007) as an example of a complaint that adequately described trade secrets as "information concerning the development, marketing and sale of Ideal's Aero 4000 motion controller, customer communications and other property").

### 2. Factual Evidence of the Unauthorized Use of a Trade Secret

Roeslein argues that Plaintiffs' allegations, that the trade secret information "has been, or inevitably will be, used, released, or disclosed by Roeslein in the course of its proposed work," is insufficient to satisfy the plausibility standard set out in *Twombly* and *Iqbal*. ECF No. 104 at 8 (citing ECF No. 100 at 35, ¶170). Roeslein contends that Plaintiffs' claim is based on Roeslein's proposed work, amounting to "pure speculation." ECF No. 104 at 8. Roeslein further argues that, to the extent Plaintiffs are relying on the "inevitable use" doctrine for prospective acts, that doctrine is inapplicable to the instant case. *Id.* at 9.

#### a. Threatened Use or Disclosure

R.C. 1333.62(A) provides that "[a]ctual or threatened misappropriation may be enjoined." Plaintiffs, citing the statute, contend that it has properly pleaded both actual and threatened misappropriation. ECF No. 106 at 10. Plaintiffs add that, to the extent the bulk of the allegations refer to threatened use, they "need not plead any actual, prior misappropriation in order to maintain a cause of action for misappropriation of trade secrets." *Id*. Roeslein argues

7

(4:12cv1830)

that Plaintiff is impermissibly relying on the inevitable use doctrine. ECF No. 104 at 9.

While often relied on as such, R.C. § 1333.62(A) is not a codification of the inevitable use doctrine. It reads,

> Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, unless the court finds that termination of the injunction is likely to provide a *person* who committed an actual or threatened misappropriation with a resulting commercial advantage, in which case the injunction shall be continued for an additional reasonable time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

R.C. § 1333.62(A). "Person" is defined in § 1331.61(C) as described by R.C. 1.59: "an individual, corporation, business trust, estate, trust, partnership, and association"; *see also* *Dexxon Digital Storage, Inc. v. Haenszel*, 832 N.E.2d 62, 69 (Ohio Ct. App. 2005).

Plaintiffs do not respond to Roeslein's argument that it is precluded from relying on the inevitable use doctrine. The "inevitable use" or "inevitable disclosure" doctrine provides that "a threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment." *Patio Enclosures, Inc. v. Herbst*, 39 Fed.Appx. 964, 969 (6th Cir. 2002), quoting *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 279 (Ohio Ct. App. 2000). Plaintiffs do not claim that the aforementioned elements are met and the record does not support such a finding. Roeslein was not an employee and it has not begun employment with a competitor. Thus, Plaintiffs cannot rely on the inevitable use doctrine to support their trade secrets claim.

8

(4:12cv1830)

Additionally, the parties do not provide the Court with legal authority regarding the type of factual allegations that would permit an inference of threatened misappropriation per § 1333.62(A).  The Court has been unable to locate legal authority indicating that a threat of misappropriation may be sufficiently alleged against a party when that party has not been hired by, or entered into a contract with, a competitor, as in the instant case.  Plaintiffs' arguments primarily rely on its allegations that its trade secrets "will be[] used, released, or disclosed by Roeslein in the course of its proposed work with [the competitor] in conjunction with the manufacture of a facility to produce C2C bottle cans for Coke."  ECF No. 100 at 35, ¶170.  At present, Plaintiffs' allegations are not tied to an imminent threat that trade secret information will be disclosed, as work done by Roeslein for the competitor is, at this point, only "proposed."  In other words, the work that may lead to use or disclosure has not been and may never be, secured.

All considered, Plaintiffs' allegations in Count 8 regarding a threat of misappropriation are speculative and must be dismissed.[5]  *See* Twombly, 550 U.S. at 555.

### b. Actual Use or Disclosure

Plaintiffs submit that it also alleges the trade secret information "has been" used, released or disclosed.  ECF No. 106 at 10.  A review of the Second Amended Complaint reveals that, although Plaintiffs allege that Roeslein "has been in or is currently in discussions with one of Exal's competitors," the allegations regarding misappropriation of trade secret information primarily refers to future acts.  *See, e.g.*, ECF No. 100 at 20, ¶¶ 81, 82, 86, 87 ("Roeslein intends

---

[5] In the event Roeslein is hired by the competitor Plaintiffs may seek leave to amend the complaint.  *See* Fed. R. Civ. Pro. 15(a)(2).

9

(4:12cv1830)

to provide"; "[i]t is inevitable that, in any capacity in which it consults, assists, or does any work . . . Roeslein will necessarily reveal, provide, disclose and/or use"; "disclosure or use of any [] trade secret information by Roeslein will result in irreparable harm..."). The prospective nature of the allegations is consistent with both parties' assertions that Roeslein was and/or is in discussions with one of Plaintiffs' competitors for proposed work as a consultant.

Plaintiffs do not explain or identify factual allegations in the Second Amended Complaint that support its allegation of actual use or explain how an inference can be drawn based on the existing allegations. Instead, Plaintiffs merely state that they have alleged actual use in the Second Amended Complaint. ECF No. 106 at 10. Although one paragraph out of 171 paragraphs in the Second Amended Complaint recites that trade secrets information "has been" used or disclosed, *see* ECF No. 100 at 35, ¶170, the balance of the allegations regarding misappropriation of trade secrets refer to future use only and do not support actual use. Because the allegations regarding actual use in Count 8 of the Second Amended Complaint amount to "'naked assertions' devoid of 'further factual enhancement,'" *See Iqbal,*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555, dismissal of Count 8 is warranted. [6]

---

[6] Plaintiffs also claim that because the Court has previously rejected Roeslein's arguments regarding this claim it should do so again, as the Court's prior Order constitutes "law of the case." ECF No. 106 at 6. The Court notes that it previously considered the sufficiency of the pleadings based on a motion filed pursuant to Rule 12(e), which provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The issue currently before the Court is based on allegations in the Second Amended Complaint that were not part of the original Complaint; were not presented to the Court in the parties' prior briefing; and were not presented in a Rule 12(b)(6) context. Therefore, the Court's prior ruling does not constitute the "law of the case on the issue of whether Exal's misappropriat[ion] of trade secrets claim is sufficiently plead[ed]," as Plaintiffs contend. *See* ECF No. 106 at 7.

(4:12cv1830)

### B. Counts 1 and 2—Fraud Claims

Roeslein moves to dismiss Plaintiffs' fraud claims, arguing that the allegations are "nothing more than breach of contract allegations" and, thus, not permitted under Ohio law. ECF No. 104 at 11.

"Generally, a party cannot allege a fraud claim arising from the same conduct that supports a breach of contract claim unless the fraud claim stems from a separate and independent duty unrelated to the parties' contractual obligations." *King v. Hertz Corp.*, 2011 WL 1297266, at *2 (N.D.Ohio March 31, 2011), citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996); *Solid Gold Jewelers v. ADT Sec. Systems, Inc.*, 600 F.Supp.2d 956 (N.D.Ohio 2007). An exception is a claim for fraud based on the alleged intention of a party "not to perform the contract at the time it was entered into," which is distinct from a breach of contract claim based on a party's "non-performance regardless of its intention at the outset or indeed at the time of the breach." *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 775 (N.D.Ohio 2004).

In Count 2, Plaintiffs' fraud claim includes allegations that Roeslein made false representations of material facts that induced Plaintiffs to enter into the "2011 consulting agreement."[7] *See* ECF No. 100 at 24-25, ¶¶99-105. This claim for fraud in the inducement may be maintained in addition to breach of contract claims because it includes separate and independent acts outside the contract. *See Title Agency*, 314 F.Supp.2d at 774.

---

[7] In the Second Amended Complaint, Plaintiffs refer to both a "2011 Purchase Order" and, in Count 2, a "2011 consulting agreement." *See* ECF No. 100 at 17, ¶69; at 24, ¶100.

11

(4:12cv1830)

In Count 1, Plaintiffs allege that "[s]tarting in the summer of 2009, during the time Roeslein was providing engineering support" to Plaintiffs, Roeslein committed fraud because it "entice[d] Exal to continue its consulting relationship [] and release its confidential information and valuable proprietary knowledge." ECF No. 100 at 21, ¶89. It is not clear from the Second Amended Complaint whether Plaintiffs are alleging that the purported behavior induced them to enter into the confidentiality agreement and the 2009 Purchase Order with Roeslein, or if the purported actions occurred after the agreements were executed.[8] Notably absent from Count 1 is a clear allegation of inducement to enter into a specific contract, despite Plaintiffs having been given notice that their prior common law fraud claim was insufficient to withstand the heightened pleading requirement of Rule 9(b). *See* ECF No. 39 at 7 (reminding Plaintiffs that Rule 9(b) requires it to, "at a minimum, [] allege the time, place and content of the alleged misrepresentation on which he or she relied, the identity of those who made the misrepresentations, the fraudulent intent of the defendants and the injury resulting from the fraud," citing *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503-504 (6th Cir. 2007). Plaintiffs have not complied with the pleading requirements of Rule 9(b), leaving the Court unable to determine whether the claim alleges separate and independent acts unrelated to contractual obligations.[9] As a result, Count 1 is dismissed.

---

[8] For example, Plaintiffs allege that they "would have never continued its consulting relationship with Roeslein," and also allege that they "would never had entered into the consulting relationship . . . had [Plaintiffs] known of Roeslein's work with AB[]." ECF No. 100 at 22, ¶¶91, 93.

[9] Plaintiffs assert that the Court had previously rejected Defendant's arguments in the first round of motions to dismiss its claim for fraud. ECF No. 106 at 13. This is inaccurate. The

12

(4:12cv1830)

## IV. Conclusion

For the reasons stated above, the Court grants in part and denies in part Roeslein's Motion to Dismiss Counts 1, 2 and 8 of the Second Amended Complaint. ECF No. 104.

The Court grants Roeslein's motion as to Counts 1 and 8 and dismisses those Counts. The Court denies Roeslein's motion as to Count 2.

IT IS SO ORDERED.

| | |
|---|---|
| December 27, 2013 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

Court, based on representations from Plaintiffs that its original claim for fraud was a claim for fraud in the inducement, permitted Plaintiffs leave to amend the Complaint to allege so with greater specificity. ECF No. 39 at 6; 28 at 10. Plaintiffs did so in Count 2.

13